**Mary D. BUCKLEY, Plaintiff-Appellant,**

v.

**HOSPITAL CORPORATION OF AMERICA, INC., Crestwood Hospital and Nursing Home, Inc., d/b/a Crestwood Hospital, Defendants-Appellees.**

No. 84–7227.

United States Court of Appeals, Eleventh Circuit.

April 29, 1985.

David H. Meginniss, Hornsby, Blankenship, Robinson & Meginniss, Pa., Huntsville, Ala., for plaintiff-appellant.

Ford & Harrison, Jefferson D. Kirby, III, Paula A. Hilburn, Ronald R. Kimzey, Atlanta, Ga., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Plaintiff Mary Buckley appeals from a decision of the district court directing a verdict in favor of the defendants, Hospital Corporation of America, Inc. and Crestwood Hospital and Nursing Home, Inc. Plaintiff alleges that the defendants discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. She alleges that the defendants subjected her to disparate treatment in the form of a constructive discharge as the result of her age. At the time of her termination, plaintiff was 62 years of age.[1]

The standard to be applied in the review of a directed verdict was announced by this Court in *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). In *Boeing* we stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of the witnesses.

*Accord, McCorstin v. United States Steel Corp.*, 621 F.2d 749, 752 (5th Cir.1980).

■ Much of the evidence in this case is disputed. Because this is an appeal from a directed verdict, however, we must view the facts in the light most favorable to the plaintiff. Using that standard, there was evidence from which a reasonable jury could find that the following events occurred.

Mary Buckley was hired by the defendants as a charge nurse on the night shift in 1968. She worked her way up through the ranks until she attained the position of day shift supervisor in 1978. Until 1978, plaintiff had had no problems with the administration of the hospital, and she received several favorable performance appraisals.

In 1978, Noble Thompson became the new administrator of the hospital. As one of his first duties as administrator, Thompson held various meetings with the hospital staff. At one of these meetings, he expressed surprise at the longevity of the personnel and stated that he wanted to attract younger doctors and younger nurses. He acknowledged that there was a rumor circulating at the hospital that nurses who were "fat and forty" would be fired. Although he denied the truth of the

---

1. The Age Discrimination Act protects employees between the ages of 40 and 70. 29 U.S.C. § 631 (Supp.1984).

rumored facts, he did state that he thought the hospital needed "new blood." He also stated that he could not understand why some of the employees had worked at the hospital so long.

In 1979, at a time when Thompson was out of town and plaintiff's supervisor Joan Karigan was ill, plaintiff discussed with a hospital physician her concerns about the hospital's plans to hire a patient with a history of drug abuse. Thompson and Karigan subsequently met with plaintiff and told her that she had acted improperly, and that if she ever went outside the "chain of command" again, she would be terminated.

Several times during the remainder of plaintiff's employment, Karigan inquired about plaintiff's retirement plans. During this time period, plaintiff also found out that two other nurses had been asked to report to Karigan anything that plaintiff said against the administration. Plaintiff asked Karigan about this situation, but Karigan told her not to worry about it.

In September 1980 plaintiff, who was working in the emergency room, went to the pharmacy to get tetanus toxoid for a patient. Susie Armstrong, who was working in the pharmacy that day, was under a doctor's care, and the staff members had been asked to be gentle with her. Plaintiff asked Armstrong to give her tetanus toxoid, and Armstrong handed her a drug. Armstrong told plaintiff to be sure to read the label, and plaintiff responded that she always read the label. Plaintiff could not read it at first, however, due to frosting caused by refrigeration of the glass container. Plaintiff took the drug back to the emergency room, but before she administered the drug she discovered that she did not have the right medication. As she returned to the pharmacy, she did not see anyone in the hallway. Plaintiff told Armstrong that she had given her the wrong medication. Armstrong said plaintiff should read the label, to which plaintiff responded that she had read the label and that that was why she was back. Armstrong then obtained the tetanus toxoid for plaintiff. During this exchange, although

there was testimony to contradict her, the jury could believe plaintiff's statement that she did not throw down the vial containing the medication, did not use an angry tone, and that she had used no profanity.

The jury, on the other hand, could have believed two hospital employees, who reported this event to the administration somewhat differently. Respiratory therapy director Charles Markham reported that he was in the hall, saw plaintiff and heard her comments. He reported that she was so loud that he heard her when she was 50 to 65 feet away. He also indicated that there were visitors in the hallway at the time. Edith Owens, head nurse on the unit, reported that she heard plaintiff's voice from approximately 25 feet away. She stated that plaintiff was talking in a very loud voice about that "damn Susie Armstrong," and that she continued to talk as she headed toward the pharmacy. These two versions, of course, presented a typical issue of credibility for a jury's resolution.

Two days later, Thompson told plaintiff that Owens and Markham had reported to him that she had lost control, screamed and cursed. Plaintiff denied the allegations and told Thompson her version of the events. Thompson stated that plaintiff was under stress, and *due to her advanced age*, she had lost her temper. He stated that he could not have a supervisor who lost her temper. He told her to take a week off, because he had to consider what he was going to do about it.

Karigan later called plaintiff into her office and told her that she knew plaintiff was under a lot of stress. She asked plaintiff if she thought it was time to retire and enjoy life with her family.

During the week's leave of absence, plaintiff wrote a letter to Thompson questioning the statements by Thompson and Karigan regarding her "advanced age" of 62. Thompson did not respond to that letter.

On her return, Thompson told plaintiff that he could not have a supervisor who lost her temper and that she would have to

step down from her position as supervisor and take a staff nursing position under Owens. As indicated above, Owens was one of the persons who reported the Armstrong incident to Thompson. In addition, plaintiff and Owens had had personal problems in the past. Owens had earlier told another employee that they needed to "do something" about plaintiff and asked the employee to report anything she heard about plaintiff's conduct. Plaintiff considered Owens to be threatening to her because Owens wanted plaintiff's job and because Owens was one of the employees who had been asked to report statements plaintiff made about the administration.

Plaintiff told Thompson that she would not step down as supervisor and work in the staff position. She told Thompson it would be "demoralizing, humiliating," and that she could not accept it because of the past relationship with Owens. Thompson did not offer plaintiff any other position. Plaintiff wrote another letter to Thompson, pointing out that Owens was one of the two witnesses whose word he had accepted over hers with the apparent intention of forcing her resignation. Thompson responded in a letter stating that plaintiff's employment was terminated and that he took action against her because she had not complied with the previous counseling session.

Following plaintiff's departure, her duties were divided among 12 other employees. Ten of these were over 40, while only two were under 40. The hospital subsequently hired an assistant director of nursing, age 45, who absorbed plaintiff's former duties. In May 1983 Owens, age 46, became clinical coordinator, a position which also absorbed plaintiff's former duties.

## I. ISSUES

The issues for decision by this Court are as follows:

1. Did the district court err in directing a verdict for the defendants on the issue of age discrimination?

2. Was there sufficient evidence to create a jury question on the issue of constructive discharge?

## II. DISCUSSION

### A. *Age Discrimination*

In directing a verdict for the defendants, the district court held that there was a lack of substantial evidence to go to the jury on the issue of age discrimination. We disagree.

As we held in *Pace v. Southern Railway System,* 701 F.2d 1383, 1388 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983), a prima facie case of age discrimination can be made out in at least three ways. First, a plaintiff may produce evidence proving all prongs of the test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Price v. Maryland Casualty Co.,* 561 F.2d 609 (5th Cir. 1977). To show a prima facie case under this test, the plaintiff must prove that "(1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job." *Id.* at 612. Second, a plaintiff can make out a prima facie case by direct evidence of discriminatory intent. Third, a prima facie case may be established by statistical proof of a pattern of discrimination.

In this case, plaintiff contends that she established a prima facie case by direct evidence of discrimination. When a prima facie case is established by direct evidence, a defendant's rebuttal burden is heavier than it would be under a *McDonnell Douglas* prima facie case. As we stated in *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982),

> Under the *McDonnell Douglas* test plaintiff establishes a prima facie case when the trier of fact *believes* the four circumstances outlined above which give rise to an *inference* of discrimination. Where the evidence for a prima facie case consists, as it does here, of direct testimony that defendants acted with a

discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, non-discriminatory reasons. Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.

(Emphasis in original; footnotes omitted).

■■■■ Viewing the evidence in the light most favorable to the plaintiff, we find that there is substantial direct evidence from which a reasonable jury could conclude that defendants acted with discriminatory intent. The significant evidence includes Thompson's expression of surprise at the longevity of the staff members, his indications that the hospital needed "new blood" and that he intended to recruit younger doctors and nurses, and his comment on plaintiff's "advanced age" causing her stress at the time of the Armstrong incident. In addition, in his investigation of the Armstrong incident, Thompson failed to interview three employees who witnessed the event and who subsequently testified in favor of plaintiff, although the names of these employees were known to Thompson at the time of his investigation. Finally, it is worth noting that, although most of plaintiff's replacements were not outside the protected class, the two individuals who ultimately absorbed the bulk of her duties were more than 15 years her junior.[2]

■■■ Defendants introduced evidence that plaintiff was disciplined, not because of her age, but because of her inability to control her temper. This articulated reason would be sufficient to rebut a prima facie case developed under the *McDonnell*

Douglas test. Here, however, there is evidence from which the jury could find that plaintiff established a prima facie case by direct evidence of discriminatory intent. If so, defendant's evidence merely creates a jury question as to whether defendants have proved by a preponderance of the evidence that the decision would have been reached even in the absence of age discrimination. We hold, therefore, that the district court erred in directing a verdict on the issue of age discrimination.

### B. *Constructive Discharge*

Defendants contend that plaintiff resigned from her position, and that there is insufficient evidence to create a jury question on the issue of constructive discharge. The standard for determining whether an employee has been constructively discharged was established by this Court in *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975), as follows:

The general rule is that if the employer deliberately makes an employee's working condition so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Accord, Calcote v. Texas Educational Foundation*, 578 F.2d 95, 97 (5th Cir.1978); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980). Defendants contend that plaintiff was not constructively discharged because she was offered another position at the same pay and benefits.

■■■ We hold that plaintiff has produced sufficient evidence to create a jury question on the issue of constructive discharge. The hospital offered plaintiff a position as staff nurse, a position which plaintiff testified she found "humiliating" after her

---

**2.** The fact that plaintiff's replacements were also within the protected class does not preclude a finding of age discrimination. *Goldstein v.*

*Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir.1985). *See also, McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir.1980).

years of service in supervisory positions. Further, the position was under the supervision of Owens, one of the individuals who had reported the Armstrong incident to administration officials. There was evidence from which a reasonable jury could find that plaintiff and Owens had experienced personality conflicts in the past and that plaintiff feared Owens was trying to get her position. In fact, Owens was ultimately selected to absorb many of plaintiff's duties. This evidence is sufficient to create a jury question as to whether a reasonable person would find these working conditions so intolerable that she would be forced to resign.

### III. CONCLUSION

We hold that the district court erred in directing a verdict for the defendants. There was sufficient evidence from which a reasonable jury could conclude that defendants discriminated against plaintiff on the basis of age and that plaintiff was constructively discharged by the defendants. We therefore reverse and remand the case to the district court for a jury trial.

REVERSED and REMANDED.

JAMES C. HILL, Circuit Judge, dissenting.

I agree with the majority's holding that the district court erred in directing a verdict on the issue of age discrimination. However, because I disagree with its holding regarding the constructive discharge issue, I respectfully dissent.

I do not believe the evidence, viewed in the light most favorable to appellant, establishes that her transfer from supervisor to staff nurse was " 'so intolerable' " that she was " 'forced into an involuntary resignation.' " *See* majority opinion, manuscript, at 1530 (*quoting Young v. Southwestern Savings & Loan Association,* 509 F.2d 140, 144 (5th Cir.1975)). Appellant was to receive the same pay and benefits in her new position as in her old one, and so, in effect, would receive the same compensation for assuming fewer responsibilities. Appellant contends the transfer was intol-

erable nonetheless because it was "humiliating" to serve as a staff nurse after having been a supervisor for a number of years, and because she would work under the supervision of Ms. Owens, who had reported the Armstrong incident to the administration and with whom she had experienced personality conflicts in the past. However, her humiliation over losing her title and supervisory power, no matter how *subjectively* painful and deeply felt, does not not make her transfer to staff nurse so *objectively* intolerable as to "force" her resignation. *E.g., Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119–20 (1st Cir. 1977) (where a social worker was relieved of his supervisory powers and title, the court held that "this sort of limited blow to one's pride or prestige does not provide reason enough to resign .... A more drastic reduction in the quality of working conditions is needed"); *Neale v. Dillon,* 534 F.Supp. 1381, 1390 (E.D.N.Y.), *aff'd without opinion,* 714 F.2d 116 (2d Cir. 1982) ("The court finds that if ... [appellant] thought her position intolerable it was due to her own perception that ... her transfer to the appeals bureau in a non-supervisory position ... [was] damaging to her prestige. While understandable, ... her embarrassment does not constitute a constructive discharge"). *Cf. Frazer v. KFC National Management Co.,* 491 F.Supp. 1099, 1105 (M.D.Ga.1980), *aff'd without opinion,* 636 F.2d 313 (5th Cir. 1981) (observing that transfer, at same pay, from district manager overseeing forty-two stores to area manager overseeing eight "would have been to some 'a come down' and to others a retirement with full pay job").

Nor are the working conditions made sufficiently intolerable to amount to a constructive discharge when her relationship with Ms. Owens is considered. That an employee does not like or is not liked by his fellow employees or supervisors does not, in my opinion, make a case of constructive discharge.

The evidence may well have been sufficient to show that appellant personally con-

sidered her working conditions intolerable, but it fails to show that a reasonable person would have considered them to be so. It is this objective test that applies. *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980); *Frazer*, 491 F.Supp. at 1105.