Teresa G. SUSSMAN, f/k/a Teresa M. Gaffney, Plaintiff,

v.

SALEM, SAXON & NIELSEN, P.A., Bernice Saxon, Richard Salem, and Richard A. Nielsen, Defendants.

No. 91–776–Civ–T–17C.

United States District Court, M.D. Florida, Tampa Division.

April 13, 1993.

Anthony F. Gonzalez, Law Office of Anthony F. Gonzalez, Tampa, FL, Neil Harvey Chonin, Chonin & Sher, P.A., Coral Gables, FL, for plaintiff.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Mark A. Hanley, Thompson, Sizemore & Gonzalez, Tampa, FL, for defendants.

*ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND ON DEFENDANTS' MOTION TO AWARD SANCTIONS*

KOVACHEVICH, District Judge.

This cause is before the court on Defendants' Motion for Summary Judgment (Docket No. 107) made pursuant to Rule 56, Fed. R.Civ.P. Defendants seek summary judgment on all remaining counts in this action, and as to all remaining Defendants. This Order also addresses Defendants' Motion to Award Sanctions (Docket No. 121) made pursuant to Rule 11, Fed.R.Civ.P. These two unrelated motions are addressed below, in sequence.

## I. MOTION FOR SUMMARY JUDGMENT

### A. *Summary of Relevant Facts*

This action, as revised through various motions and voluntary dismissals, now alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and codified as 42 U.S.C. § 2000e–2000e–17 (1982). In particular, Plaintiff alleges violations of the Pregnancy Discrimination Act ("PDA"), codified as 42 U.S.C. §§ 2000e(k), 2000e–2(a) (1982). Plaintiff also alleges violations of the Florida Human Rights Act of 1977, ("FHRA"), Chapter 760, Fla.Stat., recently amended by the Florida Civil Rights Act of 1992 (ch. 92–177, Laws of Florida).

Plaintiff alleges that, while an employee of the Defendant SALEM, SAXON AND NIELSEN, P.A. ("SSN"), she suffered disparate treatment as a result of her pregnancy, and that Defendants alleged actions subjected Plaintiff to a hostile and offensive working environment. Plaintiff alleges, inter alia, that Defendants treated her in a manner which reflected a callous disregard for instructions given by her physician to limit her working hours as a result of pregnancy complications. Plaintiff also asserts these and other alleged actions by Defendants made her working conditions so intolerable so as to be considered, as a matter of law, a constructive discharge from her position previously held with Defendant SSN. [See Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Docket No. 114), hereinafter "Plaintiff's Response," at p. 4.] The parties appear to agree that Plaintiff was not directly discharged by Defendant SSN, and that Plaintiff's involuntary separation from her job with SSN can therefore only be established if constructive discharge is successfully demonstrated.

The record also indicates a period of time, prior to May 3, 1990, during which Plaintiff alleges ongoing disparate treatment and discriminatory actions by Defendants, and during which Defendants admit uncertainty in Plaintiff's employment status with SSN. [See Defendants' Memorandum in Support of Motion for Summary Judgment (Docket No. 108), hereinafter "Defendant's Memorandum," at p. 5.]

B. *Analysis*

■ Summary judgment is appropriate only where Defendants meet their initial burden of presenting sufficient evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether any genuine issues of material fact exist, this court is required to "view all of the evidence in a light most favorable to the non-movant [(i.e., the Plaintiff)]." *Samples on Behaf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). Once Defendants' burden is met, the burden then shifts to the Plaintiff to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex, supra*, 477 U.S. at 322, 106 S.Ct. at 2552. To do so, the plaintiff must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56).

"[T]he substantive law will determine which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the case at bar, this Court concurs with Defendants' construction of the legal issues on summary judgment. (Defendants' Memorandum, p. 11.) First, this Court must determine whether there is any genuine issue of material fact that Plaintiff was constructively discharged from her position held with Defendant SSN. Summary judgment must be granted if Defendants show that constructive discharge cannot be proven, and then Plaintiff cannot establish evidence of this constructive discharge. In the alternative, this Court must determine whether Plaintiff has submitted sufficient evidence to create a genuine issue of whether those actions asserted by Defendants as non-discriminatory are, in fact, adequate to show a pretext of discrimination. If Defendants successfully demonstrate there is no genuine issue of fact as to either or both of these substantive requirements for this cause of action, and Plaintiff is unable to show the existence of a genuine issue for the relevant requirement(s), this Court is required to grant Defendants' Motion for Summary Judgment.

1) Constructive Discharge

■ This circuit's standard for proof of constructive discharge is described in *Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525 (11th Cir.1985). Citing *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975), the *Buckley* court defined constructive discharge as circumstances where an employer's deliberate actions make an employee's working condition so intolerable that the employee is forced into an involuntary resignation. 758 F.2d at 1530.

■ Defendants argue Plaintiff's work requirements and treatment received at SSN were not intolerable. For example, Defendants provide evidence, including excerpts from Plaintiff's deposition, which indicate parity between the requirements imposed on Plaintiff to bill eight hours per day, and similar requirements imposed on other employees. (See Defendants' Memorandum, pp. 12–13.) This is sufficient to shift the burden to Plaintiff to produce evidence, beyond mere allegations in the pleadings, to reestablish the issue of whether her working conditions were so different so as to be intolerable, when compared with the other employees.

■ In response, Plaintiff points to her own allegations of a general impoliteness or rudeness of certain Defendants towards her, to other alleged conduct which demonstrated hostility towards her because of her pregnancy, including increased criticism of her work products. (Plaintiff's Response, page 3, paragraph 4.j.) These uncorroborated allegations do not go beyond the pleadings, and are insufficient to create a genuine issue of

material fact on the matter of whether Plaintiff's working conditions were any different from other employees at SSN.

However, Plaintiff also offers additional facts which do convince this Court there is a genuine issue of fact material to a determination of whether Plaintiff's treatment by Defendant SSN was disparate, and whether this disparate treatment made her job so intolerable that a reasonable jury may find that a constructive discharge had occurred. It is undisputed that the PDA:

[E]mphasizes that pregnant women who are able to work must be permitted to work on the same condition as other employees; and when they are not able to work for medical reasons ... [they] must be accorded the same rights, leave privileges and other benefits, as other workers who are disabled from working.

*EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1511 (9th Cir.1989) (quoting S.Rep. No. 331, 95th Cong., 2d Sess. 3–4 (1977)).

In the case at bar, Plaintiff's physician recommended that she limit her work to a maximum of eight hours per day. (Appendix to Defendants' Memorandum, Exhibit 9.) Therefore, this order must address the important question of whether Plaintiff's evidence could be reasonably interpreted to mean that her responsibilities at SSN resulted in her facing a greater burden than other SSN employees in meeting the eight hour per day billing requirement, if she also had to limit her total hours to an amount consistent with these medical restrictions on Plaintiff's workday. If the Plaintiff's evidence establishes a possibility of a relatively greater burden on herself, this Court must then presume that a reasonable jury could also find that the extra burden faced by Plaintiff may be sufficient to establish an "intolerable condition" that would meet the definition of constructive discharge.

Along these lines, Plaintiff alleges that she was responsible for certain administrative duties as "head of the corporate business tax department." (Plaintiff's Response, page 2, paragraph 4.d.) Furthermore, it is conceded that Plaintiff was required to bill at least eight hours per day, in order to avoid salary reductions and perhaps other adverse consequences, as were other attorneys in the firm. (See Plaintiff's Response, page 2, paragraph

4.c. Also see Appendix to Defendants' Memorandum, Exhibit 14 at page 14, and Exhibit 15 at pp. 15–18.) There is no evidence presented by either party which satisfies this Court that other employees subject to the same eight hour billing requirement also had other duties which were similar in terms of the number of hours required to carry out such duties. There is evidence that other attorneys did have certain duties concerning new client development, which one SSN employee described as requiring ten hours per week, or an average of two hours each week day. However, even if these duties are assumed as accurate, there are still no facts which would resolve all questions as to whether the eight hour billing requirement was any more onerous on Plaintiff than it may have been on the other SSN employees faced with the eight hour billing requirement, and also facing the requirement of additional administrative or marketing duties. For example, there is no evidence that Plaintiff's administrative duties were in lieu of marketing responsibilities which other SSN employees were assigned. Nor is there any evidence that Plaintiff's time spent on daily administrative duties were equal to or less than the two hour per day time requirement faced by other SSN employees for marketing responsibilities.

Taking these facts alleged in a light most favorable to the Plaintiff, this Court is convinced that Plaintiff would be unable to meet her eight hour billable time requirement, and accomplish her alleged administrative duties, both within the limitations established by her physician as a result of complications with her pregnancy. Therefore, Plaintiff's evidence does establish a genuine issue of material fact which cannot be resolved as a matter of law. The genuine issue concerns the details of the billable hour requirement allegedly placed upon Plaintiff, and its relationship to her other duties. The issue may also involve a comparison of Plaintiff's additional duties at SSN with other duties faced by other employees, the magnitude of the additional burden faced by Plaintiff (if any), and other related questions. Amongst the other related questions, one would also have to consider the manner in which the rights of all SSN employees with regard to disabilities

were defined, a matter which is not addressed adequately in the pleadings before the Court.

Therefore, a genuine issue of material fact does remain concerning whether Plaintiff was subject to intolerable conditions as a result of disparate treatment, and, the issue of whether a constructive discharge did occur cannot be determined as a matter of law.

2) Pretext of Pregnancy Discrimination

■ Even if constructive discharge was conceded to Plaintiff, she still must show that the legitimate reason for disparate treatment presented by Defendants is merely a pretext for pregnancy discrimination. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As this circuit indicated in *Grigsby v. Reynolds Metal Co.,* 821 F.2d 590, 595 (11th Cir.1987), establishing a prima facie case of employment discrimination does not, by itself, entitle a plaintiff to survive summary judgment. Therefore, this Court must now turn to determining whether there is a genuine issue of material fact as to pretext. In making this second determination, it is assumed that the events alleged as together constituting constructive discharge could be proven, consistent with the conclusion reached in the subsection of this analysis immediately above.

Defendants argue that even if Defendant Salem's allegedly hostile statement were proven, it cannot constitute pretextual conduct. (Defendants' Memorandum, pp. 15–16.) Also, following the logic of *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466 (11th Cir.1991), Defendants argue that Plaintiff would have to prove Defendants did not genuinely believe that Plaintiff did not want to return to work in order to show pretext. (Defendants' Memorandum, pp. 18–19.) While both arguments by Defendants are undoubtedly pertinent to determining whether or not there was pretextual conduct to support Plaintiff's allegation of a PDA violation, this Court need not consider either of these arguments to decide whether a genuine issue of material fact as to pretext exists.

Defendants' belief that Plaintiff was not returning to work may resolve the question, in Defendants' favor, of pretextual conduct occurring after this belief was allegedly reached. However, this inquiry formulated in *Elrod, supra,* cannot resolve the question of whether Defendants' earlier conduct, that which indisputably occurred before any such genuine belief could have been formed, was pretextual. In *Elrod,* an action based on age discrimination, plaintiff Elrod was discharged, and defendant, Plaintiff's employer, claimed the discharge was based on Elrod's sexual harassment of other employees. The court required that Elrod demonstrate defendant's legitimate reason presented as the basis for his discharge, Elrod's sexual harassment of other employees, was merely a pretext for age discrimination. The court reduced this inquiry to a determination of whether defendant genuinely believed Elrod was guilty of harassment of other employees at the time defendant discharged Elrod. *Elrod,* 939 F.2d at 1470.

*Elrod* is significantly different than the instant case. In *Elrod,* the action alleged as discriminatory was the act of discharge itself. In this case, there is a sequence of occurrences alleged as discriminatory, and culminating in an alleged constructive discharge. Summary Judgment can only be granted if there is no genuine issue of material fact as to all this allegedly discriminatory conduct, not just as to alleged conduct at the end of Plaintiff's employment with Defendant SSN. As was the case in the *Elrod* inquiry, it is clearly relevant to determine whether Defendants had a genuine belief that Plaintiff would not be returning to work to test Defendants' actions in changing locks on Plaintiff's office as to be pretextual conduct. However, much of the alleged discriminatory conduct occurred before Defendants could have formed this belief that Plaintiff would not return to work.

Defendants' own evidence demonstrates there was a period of time during which Defendants were uncertain about Plaintiff's employment status, during which no genuine belief that Plaintiff was not going to be returning to work could be claimed. (See, e.g., Appendix to Defendants' Memorandum, Exhibit 4.) This period of time extended until May 3, 1990. (Defendants' Memorandum, p. 5.) Therefore, the inquiry in *Elrod* is inappropriate to determine whether Defendants' actions before May 3, 1990 were pretextual.

Among the instances of Defendants' conduct occurring before May 3, 1990, conduct alleged to be pregnancy discrimination and which Plaintiff asserts was conducted under the pretext of legitimate business decision-making, is Defendants' alleged insistence that Plaintiff bill eight hours per day. (Plaintiff's Response, Exhibit "A," p. 53.) As already concluded, this requirement by Defendants must be assumed in this analysis to constitute an intolerable condition, and must be assumed to have caused Plaintiff a burden not experienced by other employees faced with the same requirement, potentially because the other employees were not facing a pregnancy-related restriction on work hours. Having determined the *Elrod* analysis as being irrelevant to certain of Defendants' earlier conduct, and having concluded that conduct not subject to the *Elrod* analysis could have violated the provisions of the PDA, there is a genuine issue of material fact as to whether this conduct was pretextual since Defendants assert a valid business reason for their conduct. Therefore, this Court concludes that Defendants' actions occurring before May 3, 1990 could reasonably be considered as pretextual, and denies Defendants' Motion for Summary Judgment.

## II. MOTION TO AWARD SANCTIONS

### A. *Summary of Relevant Facts*

This portion of this order addresses Defendants' Motion to Award Sanctions to current Defendants and to former Defendants in this action pursuant to Rule 11, FED.R.CIV.P. The motion seeks sanctions against Plaintiff only, and not against Plaintiff's attorney. The Motion to Award Sanctions requests expenses, attorney's fees, and other appropriate sanctions. The grounds for the motion is that Plaintiff had no basis in fact for naming certain Defendants' in the original "Complaint and Demand for Jury Trial—Injunctive Relief Sought" as Defendants.

This original Complaint was filed on June 21, 1991 ("Complaint") (Docket No. 1). These certain Defendants whom the Motion to Award Sanctions alleges were sued without any basis in fact have since been dismissed by order of this Court, following a Stipulation of Dismissal entered between the parties and filed pursuant to Rule 41(a)(1), FED.R.CIV.P. (Docket No. 18.) In the Stipu-

lation of Dismissal, it should be noted that Defendants reserved the right to move for attorneys fees and costs if warranted.

Plaintiff, through her Counsel retained at that time, Mark F. Kelly, Florida Bar No. 216755, filed the original Complaint in this action. The Defendants identified in this original Complaint were SALEM, SAXON AND NIELSEN, P.A.; SS & N ASSOCIATES, INC.; SS & N FINANCIAL SERVICES; RICHARD J. SALEM; BERNICE S. SAXON; RICHARD A. NIELSEN; DAVID J. TONG; CONSTANCE J. MCCAUGHEY; JOANNE A. ELLISON; AND CHARLOTTE BARONE. The Complaint alleged that former Defendants SS & N ASSOCIATES, INC.; SS & N FINANCIAL SERVICES were " 'employers' within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b), Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and § 760.02(6), Fla.Stat. [and] have established an 'employee welfare benefit plan' within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1)." (Complaint, P. 2.)

Additionally, the June 21, 1991 Complaint also alleged that former Defendants DAVID J. TONG and CONSTANCE McCAUGHEY "were ... principals and shareholders of Defendant SALEM, SAXON AND NIELSEN, P.A. and [were] 'employers' within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b), Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and § 760.02(6), Fla.Stat., and fiduciaries with respect to the Plan within [the] meaning of Section 3(21)(a) of ERISA, 29 U.S.C. § 1002(21)(a)." (Complaint, p. 2.) There were no allegations made to identify the relevant status of former Defendants JOANNE A. ELLISON or CHARLOTTE BARONE in the original Complaint prepared by Attorney Mark F. Kelly.

### B. *Analysis*

■ Among those circumstances identified by this circuit where sanctions may be assessed under Rule 11 are those where factually groundless allegations, which are patently frivolous, have been made. *Collins v. Walden,* 834 F.2d 961, 964 (11th Cir.1987). A key inquiry under Rule 11 is whether there has been some prefiling inquiry into both the

facts and the law. Defendants here allege that Plaintiff not only failed to conduct the prefiling inquiry required by Rule 11, but furthermore knew that her allegations were false at the time she supplied these allegations to her counsel. These grounds for sanctions, though directed only at Plaintiff, necessarily require some review of the actions of Plaintiff's counsel, to ensure that counsel's affirmative duty to conduct a reasonable investigation into the facts alleged was met before filing of the Complaint currently at issue.

■ Before considering the merits of the motion, this Court notes Plaintiff's response that over one year has passed between the February 4, 1992, filing of the parties joint stipulation dismissing the former defendants, and the February 18, 1993 filing of the Motion to Award Sanctions. [Plaintiff's Response to defendants' Motion to Award Sanctions, p. 1 ("Response to Motion"). (Docket No. 124).] This raises the question whether a lengthy delay between the offending filing and the motion for sanctions should preclude or mitigate against consideration of sanctions.

The language of Rule 11 contains no indication that such a delay would limit the exercise of a court's mandate to award sanctions under otherwise appropriate circumstances. In fact, because Rule 11 sanctions are to be assessed where filings are made to "cause unnecessary delay," it is possible that this improper purpose may not become apparent to the party moving for sanctions for some time. The non-movant's illegitimate objectives may be understood only after a period of time spent acquiring additional facts, those not known at the time the offending document was first filed. Furthermore, this circuit has recently awarded Rule 11 sanctions in circumstances involving lengthy delays, similar to those in the case at bar.

■ In *Mike Ousley Productions, Inc. v. WJBF–TV*, 952 F.2d 380 (11th Cir.1992), this circuit affirmed the district court's award of sanctions, despite the following chronology. In August, 1987 plaintiff in *Ousley* filed a complaint naming Ric Hogan as one of several defendants. In May, 1988, plaintiff moved to voluntarily dismiss defendant Hogan, conceding that naming Hogan was not supported

by the facts. Although Hogan had been dismissed from the suit as a defendant, he moved for Rule 11 sanctions in June, 1989, alleging that the complaint lacked a reasonable factual basis, and asserting plaintiff's counsel had failed to conduct a reasonable investigation into the facts of the case against Hogan. Eventually, in February, 1990, the court granted sanctions against plaintiff, despite a gap of twenty-two months between the filing of the original complaint and the filing of the motion for sanctions. In affirming these sanctions, this circuit has indicated it will not consider any such delay as a barrier to the award of sanctions, and it is therefore appropriate to consider the merits of this motion. Additionally, *Ousley* also reiterates that voluntary dismissal of a claim under Rule 41(a)(1), if otherwise sanctionable under Rule 11, does not preclude the assessment of sanctions. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990) (violation of Rule 11 occurs immediately upon filing of the offending pleading or motion).

Considering the request made for sanctions against Plaintiff TERESA G. SUSSMAN, Defendants allege a Rule 11 violation on two grounds: Defendants allege that Plaintiff had knowledge that factual allegations made as to Defendants SS & N ASSOCIATES, INC., SS & N FINANCIAL SERVICES, DAVID J. TONG, CONSTANCE J. MCCAUGHEY, JOANNE A. ELLISON, AND CHARLOTTE BARONE were false, and Defendants also allege Plaintiff supplied Attorney Mark Kelly with information she knew to be false, for the improper purpose of harassing the former Defendants. (Defendants' Motion to Award Sanctions, p. 2— "Motion to Award Sanctions").

■ It is undisputed that Plaintiff did provide her attorney with factual information for inclusion in the Complaint. (Transcript of Teresa Sussman Deposition, p. 40—"T. Teresa Sussman"). Furthermore, it is also undisputed that Plaintiff received the Complaint for review before it was filed. While Plaintiff may have delegated the review of that Complaint to her husband for review, (T. Teresa Sussman, p. 40,) she did so at her own peril. Additionally, Plaintiff had deter-

mined that she had given her husband enough information to determine the factual accuracy of the Complaint as drafted. Therefore, Plaintiff is properly assigned responsibility for any statements in the Complaint, if she knew her allegations to be false. This Court now turns its attention to the question of whether Plaintiff knew the information in the Complaint was false at the time of its filing.

 Plaintiff concedes in her deposition that she was never an employee of either SS & N ASSOCIATES, INC., or SS & N FINANCIAL SERVICES, both former Defendants. (T. Teresa Sussman, pp. 120–22.) However, the Complaint alleges that both business organizations were employers, and it is presumed that allegation was intended to assert both organizations were employers of Plaintiff. (Complaint, pp. 1–2.)

Plaintiff also admits in her deposition that she was at least uncertain whether Defendant DAVID J. TONG was a partner or a fiduciary in the business organizations named as Defendants. (T. Teresa Sussman, p. 129.) Yet Plaintiff also admits to filing suit against Mr. Tong because of his position as partner with one or more of the business organizations named as Defendant. Id. Plaintiff concedes Mr. Tong's connection as the only certain basis for having named him individually as a defendant, because she had no information that Mr. Tong had been personally involved in the alleged acts of discrimination directed at her. (T. Teresa Sussman, p. 130.) This evidence demonstrates Plaintiff's knowledge that information included in the Complaint was not founded in fact, and the information was either highly questionable or false.

Plaintiff also named Defendant CONSTANCE McCAUGHEY in this suit, and alleges that Ms. McCaughey was a principal and shareholder of Defendant SALEM, SAXON & NIELSEN, P.A. Defendants have not provided evidence that Plaintiff's allegations as to Ms. McCaughey were without factual basis.

In her deposition, Plaintiff expresses significant doubt as to the status of Defendant JOANNE ELLISON, and failed to identify her clearly in any capacity that would support naming Ms. Ellison as a Defendant in this suit. (T. Teresa Sussman, pp. 131–40.) Plaintiff could not definitively say she was an employee of any organization for which Ms. Ellison was an principal or shareholder, nor that Ms. Ellison was a principal or shareholder of defendant SALEM, SAXON & NIELSEN, P.A., as is plainly asserted in the Complaint. (Complaint, p. 2.) In the face of the Plaintiff's obvious uncertainty about the facts asserted in the Complaint linking Ms. Ellison to the alleged discriminatory conduct, it is clear that Plaintiff was responsible for approving the content of a Complaint containing facts for which she had no basis.

Defendants also assert that Plaintiff's allegations were made to harass the former Defendants discussed above. There is no clear evidence indicating an improper purpose, although the pattern of unsupported factual allegations could be assumed to indicate a purposeful action by Plaintiff, as opposed to unintentional error. It is unnecessary and improper for this Court to make an inference of improper purpose, particularly when there is substantial evidence of inclusion of allegations in the Complaint which Plaintiff knew to be false. As was the case in *Collins, supra,* Plaintiff has offered no evidence to support the disputed allegations, or to demonstrate to this court that the disputed allegations are grounded in fact. *Davis v. Carl,* 906 F.2d 533, 536 (11th Cir.1990). This is sufficient basis for assessing Rule 11 sanctions, even absent any purpose to harass Defendants.

To avoid imposition of sanctions which penalize parties for the offenses of their counsel, this Court must consider whether it is proper to impose sanctions on counsel for Plaintiff in this case. *Donaldson v. Clark,* 819 F.2d 1551, 1557 n. 6 (11th Cir.1987). While this Court has already concluded that Plaintiff herself was aware that allegations in the Complaint were not grounded in fact, it is also the duty of the person signing the pleading to carry out a reasonable investigation to ensure that frivolous allegations are excised from the pleadings. Several factors bear on determining whether an attorney should be sanctioned for false information provided to him by his client.

In *Ousley, supra,* the need for, and the reasonableness of, the prefiling inquiry required by Rule 11 can only be determined after considering the length of time available to the signer to investigate facts, whether he depended on another member of the bar, and whether he had to rely on a client for information. 952 F.2d at 382. Plaintiff contends that she relied on Attorney Mark Kelly's expertise to decide what defendants to name in the lawsuit. Since the decision to name the former Defendants is the crux of the alleged Rule 11 violation, it is important to determine whether Attorney Kelly was justified in relying on Plaintiff's information about the former Defendants' positions in the various business organizations being sued for alleged discriminatory activities.

▆ Plaintiff is a member of the Florida Bar, and this fact mitigates in favor of accepting Attorney Kelly's reliance on information from his client as a reasonable prefiling inquiry. However, this Court must also consider "whether [Attorney Kelly] had to rely on [Plaintiff] for information as to the facts underlying the [Complaint in this case]." Obviously, Plaintiff's attorney could have obtained information about the officers of each business organization from other readily accessible sources, and it is unfortunate that he did not take that additional step. Nevertheless, it appears that Attorney Kelly did "doublecheck with [the Plaintiff] and [he] had some discussions with her about the specific persons involved before [he] filed the Complaint." (Motion to Award Sanctions, p. 6.) This also is some evidence of a reasonable inquiry by Plaintiff's attorney. Also Attorney Kelly apparently conducted some additional inquiry after filing the Complaint, and told Plaintiff he would have to dismiss the suit as to certain parties unless she had information that would provide a reason to maintain those persons as Defendants. (Motion to Award Sanctions, p. 6.) After Plaintiff failed to produce new information, Attorney Kelly was terminated as Plaintiff's counsel. This Court concludes, on the basis of the foregoing testimony, that Attorney Kelly did not clearly violate Rule 11, and that sanctions against him, in addition to those warranted against Plaintiff, are not supported by the facts.

This Court has determined that sanctions pursuant to Rule 11 are to be assessed against Plaintiff TERESA SUSSMAN. The nature of these sanctions must also be determined. Since the inclusion of former Defendants as parties to the suit constitute the single violation of Rule 11, and because counsel of record for these former Defendants is also counsel for the remaining Defendants in this suit, it is appropriate to require that Plaintiff compensate remaining Defendants for all costs, reasonable attorneys fees, and reasonable expenses incurred by the Defendants to defend the former Defendants in this action. Sanctions assessed shall be limited to those costs, reasonable attorneys fees, and reasonable expenses incurred up until the date of this court's order, dated March 27, 1992, (Docket No. 18) dismissing this action as to the former Defendants. Furthermore, sanctions shall also include the requirement that Plaintiff compensate Defendants for all costs, reasonable attorneys fees, and reasonable expenses for preparation and filing of Defendants' Motion to Award Sanctions filed February 18, 1993 (Docket No. 121). Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 107), be **denied;** and Defendants' Motion to Award Sanctions, filed February 18, 1993, be **granted,** as against the Plaintiff individually.

It is further **ORDERED** that Defendants submit to this Court, within ten (10) days of this order, an accounting of all costs, fees, and expenses for which compensation is being claimed pursuant to sanctions ordered herein, and Plaintiff **shall have** five (5) days to respond to the motion for attorney's fees and costs.

**DONE and ORDERED.**