EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Plaintiff–Appellant,

v.

ALTON PACKAGING CORP.,
Defendant–Appellee.

No. 89–3484.

United States Court of Appeals,
Eleventh Circuit.

May 18, 1990.

---

Angelo Filippi, Stanley Kiszkiel, Miami, Fla., Cynthia Misicka, E.E.O.C., Washington, D.C., for plaintiff-appellant.

Victor M. Halbach, Jr., Jeptha Barbour, Susan L. Smith, Jacksonville, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, and JOHNSON and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Equal Employment Opportunity Commission ("EEOC") challenges the district court's "dismissal" [1] of its claims of

1. The district court, following a bench trial, issued a memorandum opinion and order in favor of Alton and "dismissed" the case.

unlawful employment practices brought under § 703(a) and § 709(c) of Title VII, 42 U.S.C.A. §§ 2000e–2(a) and 2000e–8(c); 29 CFR § 1602.14.

## I. STATEMENT OF THE CASE

Appellee Alton Packaging Corp. ("Alton") manufactures paper cores and tubes for the paper mill industry in Jacksonville, Florida. Otis Felton, a 42–year–old high school graduate, began working for Alton in 1974, after holding positions elsewhere in the paper industry. While at Alton, Felton advanced through the ranks of seniority. He began as a general laborer, moving on to sawman trainee, number 2 roll hanger, number 1 roll hanger, tow motor operator, slitter winder helper, and spiral/tube winder operator. Alton awarded Felton a "red circle" pay increase for good work, and a supervisor once took him out to dinner for a job well done. On the other hand, his employment file as of fall 1983 contained reprimands for improper work habits, tardiness, unexcused absences, insubordination, and falsifying documents.

In late 1983, Alton acquired a new slitter/rewinder machine. Alton determined that the new machine would occasion greater productivity and thus decided to create a new production shift. Alton needed a production supervisor to head up the new shift.[2] The production supervisor would supervise the operation of the new machine, operate the machine, order supplies, train employees, complete production records, and so forth. There was no written description of duties or qualifications needed for the new supervisor, and Alton posted no notice of the promotion opportunity at the plant.

Robert Raymond, the general manager of the plant, and Robert Diesen, the production manager, reviewed the files of the existing Alton personnel. They determined that none of the employees, including Felton, were qualified for the new supervisor's position. They then placed an ad in the local newspaper, seeking a "high school graduate, some college preferred" who was "mechanically inclined and good with figures." Alton received several applications as a result of this ad, and in January 1984 hired Kevin Blake, a white male. Blake had a college degree in industrial technology and had had previous employment as an electrician. Thirty days after Alton hired Blake, but before Felton filed with the EEOC, Alton destroyed all of the applications for the supervisor's position.

Felton discovered that a position had been available when he was introduced to the new production supervisor, Kevin Blake. Feeling that Alton had passed over him for the position because he was black, Felton filed a discrimination charge with the EEOC. On September 29, 1987 the EEOC filed suit in federal court alleging that Alton had refused to promote Felton in violation of § 703(a) of Title VII. On August 22, 1988, the EEOC amended the complaint, alleging that Alton had also failed to preserve the applications for the position in violation of § 709(c) of Title VII. The non-jury trial took place on March 9, 1989. At trial, one witness testified that Robert Raymond had stated that "if it was his company, he wouldn't hire any black people." Another witness, a black former Alton employee, testified that Robert Diesen had yelled at him, "___ ____ it, you people can't do a _____ thing right." Felton testified that he did not agree with all of the reprimands in his file. The EEOC objected to several handwritten reprimands on hearsay grounds.

On April 17, 1989, the district court denied the EEOC's claim. The court found that Felton was not qualified for the job in question, while Blake was. Further, the court found no evidence that Alton willfully violated Title VII's record-keeping provision. The EEOC filed Notice of Appeal with this Court on June 12, 1989. On appeal, we consider whether the district court erred in its analysis of the discrimination claim, whether the district court erred in admitting the written reprimands contained

---

**2.** Production supervisor is the third position from the top in the Alton management hierarchy.

in Felton's personnel files, and whether the district court erred in refusing to issue an injunction against Alton for its violation of Title VII's record-keeping provisions.

## II. ANALYSIS

### A. *The Discrimination Claim*

The district court concluded that:

(1) Felton was not qualified for the job in question

. . . .

(2) Felton's work history and performance were enough to disqualify him.

(3) Felton's qualifications did not approach those of Blake.

(4) Blake was well qualified for the job. In fact, his qualifications and history on the job were superior.

(5) Plaintiff did not show the business reasons advanced by defendant were pretextual.

This Court reviews the district court's findings of fact under the clearly erroneous standard, Fed.R.Civ.P. 52(a), unless the district court made those findings pursuant to an erroneous view of controlling legal principles. *Harris v. Birmingham Bd. of Educ.*, 712 F.2d 1377, 1381 (11th Cir.1983).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court designed a test for determining whether a plaintiff has proven a *prima facie* case of discriminatory treatment.[3] *See also Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138,

1143 (11th Cir.1983) (in discriminatory promotion cases, plaintiff must prove that the denial of the promotion was motivated by discriminatory intent). This test, however, is to be applied in cases where circumstantial evidence is the only proof of discrimination. When a plaintiff proves a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate. *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir.1982). In a direct evidence case, the plaintiff must produce direct testimony that the employer acted with discriminatory motive, and must convince the trier of fact to accept the testimony. *Id.* If the plaintiff produces such evidence and the trier of fact believes it, the defendant must prove by a preponderance of the evidence that the defendant would have reached the same decision without the factor proved. *Id.; Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 1787, 104 L.Ed.2d 268 (1989). In other words, the employer must prove that even if it had not taken race into account, it would have come to the same decision. *See Price Waterhouse*, 109 S.Ct. at 1786.

The EEOC argues that the statement by Raymond that if it was his company he wouldn't hire any black people and the statement by Diesen to a black employee that "you people can't do a ___ thing right" constitute direct evidence of discrimination.[4] Thus, the EEOC argues that the district court erred in applying the *McDonnell Douglas* circumstantial evidence test.[5] We agree.

---

**3.** To prove a *prima facie* case of discrimination, the plaintiff must show (1) that he belongs to a minority; (2) that he applied and was qualified for an open position; (3) that he was rejected in spite of his qualifications; and (4) that the position remained open after his rejection. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the rejection. The burden then shifts back to plaintiff to prove that the articulated reason was mere pretext. *McDonnell Douglas*, 411 U.S. at 802–805, 93 S.Ct. at 1824–25. *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–55, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981) (articulating the burdens of proof and persuasion).

**4.** The EEOC did not advocate the direct evidence standard in the findings of fact and conclusions of law that it submitted to the district

court. In its trial memorandum, however, the EEOC argued that the statements constituted direct evidence sufficient to prove pretext. Although the EEOC may have confused the *McDonnell Douglas* and direct evidence standards somewhat, we conclude that it did raise the direct evidence issue below.

**5.** The district court does not explain what test it used. The court did state, however, that the "business reasons advanced by defendant" were not proven to be "pretextual." A defendant may rebut a plaintiff's *prima facie* case under *McDonnell Douglas* by proving that it had legitimate business reasons for its conduct. The plaintiff then must respond by showing those business reasons to be pretextual. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. The district court's use of the word "pretextual" indicates

■ The facts in this case are very similar to those in *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985). In *Miles*, this Court found that a racial slur uttered by the person in charge of making employee evaluations and rehiring suggestions constituted direct evidence of discrimination. *Id.* at 876. Similarly, the EEOC alleges in this case that the two men responsible for promotion decisions at Alton made racial slurs. Under *Miles*, such slurs constitute evidence of a discriminatory motive requiring the burden to shift to the defendant to prove by a preponderance of the evidence that the defendant would not have promoted Felton absent the discriminatory motive. *Id.* *See also Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1530 (11th Cir.1985) (hospital administrator's statement that the hospital needed "new blood" and that the plaintiff's advancing age impeded her constituted direct evidence in ADEA case); *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir.1985) (director's statement that he wanted a younger person to fill the position constituted direct evidence in ADEA case).

Alton argues that *Miles* does not apply because the speaker did not rebut the racial slur, while the speakers in this case denied making the racially derogatory statements. The lower court in this case may well have disbelieved the testimony regarding the racial slurs. If so, however, the court should have stated its disbelief explicitly. "When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination. Absent any reference to the direct evidence, it is unclear how the court below found." *Thompkins v. Morris Brown College*, 752 F.2d 558, 564 (11th Cir.1985) (citation omitted). In the present case, the district court made absolutely no reference to the racial slurs, leaving this Court no means of determining whether the court disbelieved the plaintiff's testimony.[6]

*Price Waterhouse* does not define direct evidence. In her concurrence, however, Justice O'Connor stated that "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse*, 109 S.Ct. at 1804. Raymond's statement that if it were his company he would not hire blacks does not fall into any of these categories. Raymond was a decisionmaker, and he made the remark in reference to hiring. Diesen's statement is the kind of stray remark contemplated by Justice O'Connor, but does not affect the outcome. Raymond's statement constituted direct evidence of discrimination which Alton was required to rebut by a preponderance of the evidence. The district court erred when it failed to place this burden on Alton.

Alton argues that the court's error was harmless because Alton proved by a preponderance of the evidence that Felton would not have been promoted anyway. A reviewing court must disregard as harmless error any error which does not affect the substantial rights of the parties. Fed. R.Civ.P. 61.

Under the *McDonnell Douglas* test, once a plaintiff has established a *prima facie* case of discrimination, the defendant may rebut that case "by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The defendant does not need to prove that it was persuaded by those reasons; "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact...." *Id.* The burden is a burden of production, not proof. *Lee*, 684 F.2d at

that it was applying the *McDonnell Douglas* standard.

**6.** Alton also argues that Raymond's statement referred to *hiring* blacks, not promoting them, and that Diesen's statement didn't refer to the employment process at all. Alton misses the

point. The statements indicate a decidedly negative attitude toward black people on the part of the two people responsible for promotions. There is no reason to think those attitudes differ from hiring to promotion.

773. In a direct evidence case, on the other hand, the defendant must *prove* by a preponderance of the evidence that it would not have promoted the plaintiff even absent the discriminatory motive. *Price Waterhouse*, 109 S.Ct. at 1792. Production of nondiscriminatory reasons is not enough in a direct evidence case; the defendant must prove that there was a separate, racially-neutral reason for its failure to promote the plaintiff. *Id.* at 1791.

■ Alton argues that the district court based its decision upon two facts: (1) the fact that Felton was not as qualified as Blake; and (2) the fact that Felton's lack of qualifications constituted a separate, non-discriminatory reason. If the court based its decision solely on the first factor the decision cannot stand. "An employer may not ... prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins*, 109 S.Ct. at 1791. This Court has stated even more clearly, "failure to promote a plaintiff because the person actually promoted was more qualified is a nondiscriminatory reason, but the articulation of that reason must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made." *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 774 (11th Cir.1985). Because Blake did not apply for the position until after Raymond and Diesen had determined that Felton was not qualified, Blake's qualifications could not have motivated their decision.

■ The second factor, however, has a basis in the record and supports a judgment in favor of Alton. A preponderance of the evidence indicates that Alton would not have promoted Felton even without the discriminatory reasons. At the time that Alton passed over Felton,[7] Felton's file contained reprimands for at least one unex- cused absence, three instances of unexcused tardiness, three production errors, one instance of falsifying records, and one refusal to attend a meeting. His employee attendance record showed approximately 13 instances of tardiness from 1974 through 1978. Felton did not have college experience, and supervisors reported some difficulty in communicating with him. He demonstrated a lack of attention to detail, a negative attitude and, on occasion, an inability to train his crew. The above evidence demonstrates that Felton was not qualified for a high-level supervisory position requiring him to be responsible, to supervise a number of workers, and to communicate with people outside the company. Thus, although the district court erred in its choice of legal principles, the error was harmless because Alton would have prevailed under the applicable legal principles. The EEOC concedes that there is no need for further factual development. We therefore affirm the district court's conclusion on this issue.[8]

### B. *Admissibility of Written Reprimands*

Determinations regarding admissibility of evidence are not disturbed on appeal absent a clear showing of abuse of discretion. *Baylor v. Jefferson County Bd. of Educ.*, 733 F.2d 1527, 1533 (11th Cir.1984). The disputed documents were five hand-written, unsigned pages, listing 15 reprimands, contained in Felton's personnel file. The file also contained 12 other reprimands, all of which were signed, some by Felton himself. The EEOC objected to the handwritten documents on the grounds of hearsay and lack of authentication. The district court determined that the reprimands sufficiently complied with the business records hearsay exception to be admitted. The court also found that there was "enough credible evidence" to warrant admission.

---

7. Alton presents numerous reprimands occurring after Felton was passed over. These reprimands have no bearing on Alton's motivation at the time it passed over Felton.

8. The EEOC argues that *Miles* requires us to remand. This is incorrect. The *Miles* court remanded because it was "doubtful" that the defendant could meet the heavier direct evidence burden. 750 F.2d at 876. Alton could clearly meet that burden.

Under Fed.R.Evid. 803(6), business records are admissible if (1) they were made at or near the time the recorded events occurred; (2) they were made by, or from information transmitted by, a person with knowledge of the recorded events; (3) it was the regular business practice of the organization to keep such records; (4) the record was kept in the course of a regularly conducted business activity; and (5) all of the above is shown by the testimony of the evidence custodian or other qualified witness. It is not essential that the witness be certain of who recorded the item; the witness simply must show that the record is authentic and that it was made and preserved in the regular course of business. *United States v. Jones*, 554 F.2d 251, 252 (5th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). At trial, Raymond testified that Alton kept the reprimands in the regular course of business and that they were made at the time the events occurred. He also testified that as records custodian, he supervised the records. We need not reach the question as to whether the district court erred in admitting the reprimand documents because the EEOC is not challenging the propriety of reliance upon reprimands. Rather, it is arguing that absent the five handwritten pages, there would have been insufficient evidence to prove Felton was not qualified. The EEOC is mistaken. There were other reprimands in the file which were admissible, and which indicated unexcused absences, tardiness, and bad work habits. Because authenticated, admissible documents support the district court's conclusion that Felton was not qualified, admission of the handwritten documents constitutes harmless error.

## C. *Refusal to Issue Injunction*

Title 42 U.S.C.A. § 2000e–8(c) states that employers must keep records "relevant to the determinations of whether unlawful employment practices have been or are being committed." The employers must preserve those records for such periods as the Commission shall prescribe, and must make reports on them as the Commission prescribes. The EEOC regulation states:

(a) Any personnel or employment record made or kept by an employer (including but not necessarily limited to application forms submitted by applicants ... shall be preserved by the employer for a period of 6 months from the date of the making of the record or the personnel action involved, whichever occurs later.... Where a charge of discrimination has been filed, or an action brought by the commission or the Attorney General, against an employer under Title VII, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14(a) (1988).

The district court determined that the applications for the management supervisor position were negligently destroyed after 30 days. The court refused to grant an injunction, however, because Alton's noncompliance with Title VII and the regulation was not willful.

The power to grant or deny an injunction normally lies within the discretion of the trial court. *NAACP v. City of Evergreen, Ala.*, 693 F.2d 1367, 1370 (11th Cir.1982). If there is abundant evidence of past discrimination "injunctive relief is *mandatory* absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law." *Id.* (emphasis in the original); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1561 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). Alton stipulated prior to trial that its ordinary business practice was to destroy all applications for employment 30 days from the date of the selection decision. Although such destruction clearly violates the six-month preservation requirement under 29 CFR § 1602.14(a), this stipulation constitutes evidence of past violations, not of past *discrimination*. Absent such evidence, an injunction is not mandatory. The district court determined that Alton destroyed the records in good faith; presumably the court also satisfied itself that Alton would not commit further violations in the future. The district court did

927

not abuse its discretion in refusing to issue an injunction.

III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision in favor of Alton Packaging.

AFFIRMED.