Jerry L. COOK, Plaintiff,

v.

SHAW INDUSTRIES, Defendant.

Civil Action No. 95–D–1015–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 18, 1996.

Banks T. Smith, Dothan, AL, for plaintiff.

Leslie M. Allen, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on Defendant Shaw Industries, Inc.'s ("Defendant") motion for summary judgment and brief in support filed on April 30, 1996. Plaintiff, Jerry L. Cook, ("Plaintiff"), responded in opposition to Defendant's motion on May 16, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Defendant's motion for summary judgment is due to be granted in part and denied in part.

## JURISDICTION

Based upon 28 U.S.C. § 1331 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## STATEMENT OF FACTS

This is an action under the Age Discrimination in Employment Act ("ADEA"), alleging a constructive discharge. The Plaintiff seeks compensatory and punitive damages and any equitable relief to which he may be entitled.

The Plaintiff was hired by the Defendant on or about October 13, 1993. His employment ended on March 2, 1994 when he left his position with the Defendant. The Plaintiff's age discrimination claim is based upon his allegation that his working conditions were so intolerable that he was forced to leave his position with the Defendant. Additionally, the Plaintiff alleges that these intolerable conditions were related to his age. The Plaintiff was forty-five (45) years old on the date he was hired. Pl.'s Br. at 1.

From October 13, 1993 until late January or February 1994, the Plaintiff was a drawtexturing operator trainee in Phase I of Defendant's Drawtexturing Department. *Id.;* Def.'s Br. at 2. Upon completion of this training, the Plaintiff was certified as an drawtexturing operator and remained in Phase I of the Drawtexturing Department. During his initial training, Mark Harrell ("Harrell") was assigned as the Plaintiff's training instructor. Def.'s Br. at 3. Following his certification, Mark Harrell was the Plaintiff's assistant supervisor and the Plaintiff's supervisor was James Stoudemire

("Stoudemire"). Christopher Ray Bennett ("Bennett") Aff. at 3.

During the Plaintiff's orientation, he and other drawtexturing operator trainees were told that they would receive two ten minute breaks per shift and one twenty minute "dinner" break per shift. *Id.* at 1. Defendants' employees were also allowed to leave their assigned machines to go to the restroom or to smoke a cigarette. Ron Fantroy Dep. at 38–39. Plaintiff alleges that he was consistently denied the opportunity to take his allotted breaks and often was unable to leave his machine even once during an entire eight hour shift. Pl.'s Br. at 3, 5–7. Plaintiff also alleges that younger employees received substantially more breaks than he did. *Id.* at 4–5. Plaintiff also alleges that he was forced to run more "reclaim" yarn.

The Plaintiff alleges that on several occasions he was encouraged to leave the drawtexturing department because of his age. For instance, the Plaintiff alleges that on at least two occasions Harrell asked the Plaintiff if he wanted to transfer to another department because the Plaintiff was too old for the drawtexturing department. See Bennett Aff. at 1.[1] The Plaintiff also alleges that Stoudemire commented on the Plaintiff's age on two different occasions. Pl.'s Dep. at 98–99. During the first conversation Stoudemire allegedly told the Plaintiff: "I'm not suppose[d] to say this according to the law but I feel that the whole phase draw texture should be young boys." *Id.* at 98 (Plaintiff's description of his conversation with Stoudemire). Allegedly, Stoudemire furthered explained that he was asking the Plaintiff to transfer because the Plaintiff's age prevented him from properly performing his duties. *Id.* The Plaintiff allegedly complained to Harrell that he was being discriminated against because of his age. *Id.* at 105.

The Defendant counters by pointing out that Plaintiff was treated in the same fashion as all other employees in regards to receiving breaks. Def.'s Br. at 9–15. Further, the Defendant explains that employees have a

---

1. In his brief the Plaintiff cites several pages of his deposition which purportedly recount the substance of Harrell's transfer discussions. Pl.'s Br. at 2. However, these page citations are incorrect and the court has not located the appropriate pages on its own inspection. Nevertheless, the court finds this allegation is supported by the record. *See* Bennett Aff. at 1.

responsibility to work together to secure their breaks and that employees are not specifically assigned to help each other secure these breaks. *Id.* at 10–12. Additionally, the Defendant insists that, even if the court finds unequal treatment, there is no relationship between the Plaintiff's age and such treatment. *See id.* at 19–21.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

In order to prevail on his claim of constructive discharge, the Plaintiff must show that the Defendant made his working conditions "so difficult that a reasonable person in the [Plaintiff's] position would feel compelled to resign." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986). In *Hill v. Winn–Dixie Stores, Inc.,* 934 F.2d 1518 (11th Cir.1991), the Eleventh Circuit repeated the familiar standard by which constructive discharge claims are analyzed:

> 'The law in this circuit with respect to constructive discharge is well-established. To show constructive discharge, the employee must prove that his [or her] working conditions were so difficult or unpleas-

ant that a reasonable person would have felt compelled to resign.' Before finding a constructive discharge, this court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.' *Id.* at 1527 (citations omitted). A reasonable employee is one who does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987). If the intolerable working conditions are the result of a hostile work environment caused by age discrimination, then the constructive discharge violates ADEA. *See Griswold v. Alabama Dept. Indus. Relations,* 903 F.Supp. 1492, 1496 (M.D.Ala.1995) (Albritton, J.).

■ The court finds that the Plaintiff has presented sufficient evidence for a reasonable jury to find that the Plaintiff's working conditions were intolerable. The Plaintiff alleges that on some occasions he was unable to take a single break during an entire eight hour shift. The Plaintiff additionally alleges that such days were the rule rather than the exception. The Defendant has also produced a considerable amount of evidence showing that Plaintiff either took a considerable number of breaks or that the Plaintiff "assume[d] the worst." This rebuttal evidence only confirms the court's finding that a material issue of fact exists on the Plaintiff's claim of constructive discharge.[2]

■ For this alleged constructive discharge to be actionable under the ADEA, the Plaintiff must additionally show that the defendant acted with discriminatory intent. *See Lindsey v. American Cast Iron Pipe Co.,* 772 F.2d 799, 801–02 (11th Cir.1985). The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." *Id.* at § 631(a). Although the *McDonnell Douglas* test is the seemingly universal starting point for proving a *prima facie* case of discrimination, the test is inappropriate in direct evidence cases. *E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 923 (11th Cir.1990). If a plaintiff produces direct evidence of the defendant's discriminatory intent, then the defendant must prove "that the defendant would have reached the same decision without the factor proved." *Id.* (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 774 (11th Cir.1982)).

■ However, not every "stray comment" that might be considered disparaging is sufficient to constitute direct evidence. *See id.* at 277, 109 S.Ct. at 1804–05 (O'Conner, J., concurring). Instead, direct evidence is that "evidence which, if believed, 'establishes discriminatory intent without inference or presumption.'" *Lewis v. Zilog,* 908 F.Supp. 931, 951 (N.D.Ga.1995) (quoting *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993)). It is not enough that a defendant has made a comment about the plaintiff's age. *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989). For instance, remarks that merely refer to "characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." *Id.* (quoting *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988)).

■ Only the "most blatant remarks," those that could only evidence an intent to discriminate based upon age are useful as direct evidence. *Id.* In a recent decision, this court illustrated the type of statements which rise to this level of direct evidence. *See Brook v. City of Montgomery, Ala.,* 916 F.Supp. 1193, 1203–05 (M.D.Ala.1996) (De Ment, J.). The plaintiff in *Brook* alleged that he had been denied two promotions based upon his age. *Id.* at 1203. The plaintiff

---

2. The Plaintiff has also presented testimony concerning other alleged intolerable conditions. While the court acknowledges the evidence and the Defendant's counter evidence, the court makes it decision based solely upon the break evidence and leaves the remaining evidence for the jury to examine.

relied on two purported direct evidence statements: (1) " 'the [defendant] needed a younger man for the job' " and (2) " 'it wasn't right for [the plaintiff] to be promoted because [the plaintiff would get extra money" upon retirement. *Id.* The court found that the "younger man" comment was a stray remark since this statement was an offhand remark, the statement was not specifically directed towards the plaintiff, and there was no causal connection between the comments and the promotion denials. *Id.* When considering the retirement statement, the court found that the statement at best required the court to infer discrimination; the statement alone did not show discriminatory animus. *Id.*

■ The court finds the alleged statements in this matter constitute direct evidence. These alleged statements were specifically directed to the Plaintiff and demonstrate an intent to force the Plaintiff into leaving the drawtexturing department. The court did not have to take an additional inferential step to reach a finding of discriminatory intent on the Plaintiff's claim of constructive discharge. Unlike Justice O'Connor's stray comment model in *Price Waterhouse,* these statements were made by decisionmakers. Both Harrell and Stoudemire played a large role in determining the Plaintiff's work environment. *See* Bennett Aff. at 3 (describing Harrell's de facto supervisor status due to Stoudemire's frequent absences from the plant floor). If these statements are true, they demonstrate the Defendant's intent to force the Plaintiff out of the drawtexturing department. Therefore, the Plaintiff's offer of direct evidence is accepted by the court.

■ In order to rebut the Plaintiff's direct evidence *prima facie* case, the Defendant must show that the Plaintiff would have been discharged absent the allegedly discriminatory constructive discharge. The Defendant has not made such a showing. In fact, the Defendant's questioning of the Plaintiff during the Plaintiff's deposition supports exactly the opposite conclusion. The

following excerpt from the Plaintiff's deposition is especially striking:

> *Question:* Did anybody at the company ever tell you that your production was too low?
>
> *Answer:* No, ma'am.
>
> *Question:* Did anybody ever pull you aside and tell you Jerry, you have got to meet production; you are not meeting production?
>
> *Answer:* No, ma'am.
>
> *Question:* Did anybody ever counsel you or issue you a written warning about job performance?
>
> *Answer:* No, ma'am.

Pl.Dep. at 105 (examination by Defendant's counsel). The Defendant has not offered any evidence to show that Plaintiff would have been terminated if not for the alleged age discrimination. Instead, the excerpted deposition testimony shows that the Defendant had no concerns over the Plaintiff's work performance. Therefore, the court finds that the Defendant has not rebutted the Plaintiff's prima facie direct evidence case.

■ The Defendant also contends that the Plaintiff's damages are limited by the after acquired evidence doctrine. *See McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 879, ——–——, 115 S.Ct. 879, 885–86, 130 L.Ed.2d 852 (1995); *Wallace v. Dunn Constr. Co., Inc.,* 62 F.3d 374 (11th Cir.1995).[3] Under this doctrine, evidence discovered subsequent to the alleged discrimination which would have led to the employee's immediate termination, is considered by the court in calculating the plaintiff's damages. *See id.* If a court finds that the after-acquired evidence would have led to the plaintiff-employee's immediate dismissal, then the plaintiff may no longer recover front-pay and may not be reinstated to the former position. *Wallace,* 62 F.3d at 380. In such a situation, a court will also calculate backpay by setting the beginning point for backpay as the date of the alleged discriminatory event and setting the end point on the

---

**3.** Neither *McKennon* nor *Wallace* deal with falsified employment applications in an ADEA action. However, the court finds based upon *McKennon* and *Wallace,* that the after-acquired evidence doctrine applies to just such a situation.

date that the after-acquired evidence was discovered by the employer. *Id.*

On December 12, 1995, the Plaintiff was questioned about the accuracy of his employment application filed with the Defendant. Pl.Dep. at 14. During this questioning the Plaintiff revealed that he had omitted two positions from his list of previously held positions. *Id.* at 15 ("On this application at the time I filled it out, I failed to list two short-time employments."). Subsequent deposition testimony allegedly showed that the Defendant immediately fired those employees who falsified prior employment history on their applications. Def.'s Br. at 22–23; *see* David Baker Dep. at 9–10 (describing Baker's firing by Defendant for failure to list a previous position).

The Plaintiff has failed to offer any rebuttal of this evidence. Instead, the Plaintiff only contends that his omission was not intentional.[4] Pl.'s Br. at 12. The court finds that even if the omission was unintentional, the Plaintiff would have been terminated pursuant to the Defendant's seemingly iron-clad policy of immediate termination for any falsification on an employment application. Therefore, the court finds that the Defendant has validly presented after-acquired evidence and that the Plaintiff's damages, if any are ultimately awarded, should be appropriately limited. Additionally, the court finds that the Plaintiff will not be eligible for front-pay or reinstatement and his back pay damages will be based upon the period from March 2, 1994 until December 12, 1995.[5]

### CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendant's motion for summary judgment be and the same is hereby GRANTED in part and DENIED in part.

---

4. The Plaintiff's deposition suggests that he could have omitted his prior employment due to fear that it would prevent the Defendant from hiring him. Pl.Dep. at 16 (Plaintiff stated that he quit a prior unlisted job because "I feared for my life and my supervisor stole from the company and tried to pin it on me.").

5. The court sees no evidence of any "extraordinary equitable circumstances" that would cause the court to abandon the standard approach to after-acquired damage calculations. *See Wallace,* 62 F.3d at 380.