DAVIS, Circuit Judge, dissenting:
I respectfully dissent from section B. of the majority opinion. In that section, the majority gives its reasons for affirming the district court’s dismissal of Dr. Knatt’s *488 claims under § 1983 and § 1985(3) on summary judgment. The district court dismissed the § 1983 claims on the basis that Dr. Knatt failed to establish a prima facie case of discrimination under the McDonnell Douglas test. On both the § 1983 claim and the § 1985 claim, the district court concluded that Dr. Knatt did not establish that race played a part in his summary suspension.
The main question we have in this case is the usual one we face in summary judgment cases: whether the plaintiff produced sufficient evidence to raise a genuine issue of material fact on a key issue. In this case the key issue is whether race played a role in the defendants’ suspension of Dr. Knatt from practicing as a physician at Lane.
Dr. Knatt was entitled to raise genuine issues of fact on this issue in two ways. First, he could present direct evidence of discrimination. Portis v. First Nat’l Bank, 34 F.3d 325, 328 (5th Cir.1994). Because Dr. Knatt’s claims are employment related and in that context direct evidence of discrimination is rare, Dr. Knatt could alternatively use the standard set out in McDonnell Douglas to establish an inference of discrimination. Id. Contrary to the majority’s description, the McDonnell Douglas approach is simply an additional, easier weapon a plaintiff has in his arsenal to prove the fact at issue: discrimination. The invocation of McDonnell Douglas does not supplant the traditional direct evidence method of proof. If the plaintiff can demonstrate the existence of a material fact tending to show discrimination either by direct evidence or through the method established by McDonnell Douglas, he can avoid summary judgment.
Therefore, when Knatt alleged and argued that race played a role in his employer’s decision to suspend him, Knatt was entitled to prove this fact either by direct evidence or the McDonnell Douglas standard. Once the district court grants summary judgment, our task is to review that ruling de novo and consider “the record taken as a whole” drawing “all reasonable inferences in favor of the nonmoving party” and refrain from making credibility determinations or weighing of the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(internal quotation marks and citations omitted).
This review includes consideration of whether a fact issue has been raised either under the McDonnell Douglas standard or the traditional direct evidence method of proof. For example in Jatoi v. HurstEuless-Bedford Hospital Authority, although the plaintiff failed to meet all four criteria of the McDonnell Douglas test, this court went on to examine the summary judgment record as a whole to determine if summary judgment was appropriate.
While proof of all four of the McDonnell Douglas criteria will establish a circumstantial prima facie case, such proof is not the exclusive means of establishing a plaintiffs preliminary burdens. In Byrd v. Roadway Express, Inc., 687 F.2d 85, 86 (5th Cir.1982) the plaintiff established the first three criteria but could not establish the fourth because his position had been filled by another minority. As we stated in Byrd, “the focus of the inquiry may not be obscured by the blindered recitation of a litany.” 687 F.2d at 86. If a plaintiff cannot establish some or all of the McDonnell Douglas steps, the district court must examine all the evidence that has been adduced for other indicia of racial discrimination relating to his discharge and determine whether it is more likely than not that the employer’s *489 actions were based on illegal discriminatory criteria. Id.
Jatoi v. Hurst-Euless-Bedford Hospital Authority, 807 F.2d 1214, 1219 (5th Cir.1987)(emphasis added).
Racial animus, like any other fact, can be established by direct or circumstantial evidence. For example, in Fierros v. Tex. Dep’t of Health, 274 F.3d 187, 195 (5th Cir.2001), to determine whether the district court erred in granting summary judgment in favor of defendants on the element of causation, this court reviewed Fierros’ direct evidence of a statement her supervisor made to her that she had been denied a pay increase because she had filed a discrimination claim against him. It also considered the circumstantial evidence that supported the finding that discriminatory motive was present.
The summary judgment record includes an affidavit in which Fierros states that Arnold told her that she had been denied the pay increase because she filed a discrimination complaint against him. Such an affidavit is direct evidence that Arnold had a retaliatory motive because it “is evidence which, if believed, proves the fact [of intentional retaliation] without inference or presumption.”
Our determination that Fierros has raised a jury question about whether Arnold intended to retaliate against her when he denied her the merit pay increase is further supported by circumstantial evidence.

Id.

Thus, this court can look at all evidence in the record, both direct and circumstantial, to determine if Dr. Knatt has raised a genuine issue of material fact for trial. Dr. Knatt argued both in the district court and in this court that he was entitled to defeat the summary judgment motion based on the direct and circumstantial evidence which he described in his brief. Two full pages of Dr. Knatt’s brief are dedicated to a discussion of evidence of racial animus and how that evidence establishes discrimination. The remainder of the circumstantial evidence is discussed throughout his brief. Despite the fact that this is Dr. Knatt’s central argument in this appeal, the majority concludes that this issue is inadequately briefed to preserve the argument on appeal. Apparently the majority would require Knatt to tag each item of evidence as either supporting his argument of discrimination under the McDonnell Douglas standard or his argument of discrimination based on direct and circumstantial evidence. Such a requirement makes no sense. If a plaintiff can raise a genuine issue of material fact tending to show discrimination, the defendant’s motion for summary judgment must be denied.
Dr. Knatt complains of a conspiracy at the hands of the defendants that began before his suspension. Beginning in October 2001, an Ad Hoc Committee was appointed by the Executive Bylaws Committee of the Board of Lane Memorial to single out Dr. Knatt to review complaints about him, particularly any on-call incidents. The review lasted until January 2002. According to the deposition testimony of Dr. Rathbone and Dr. Fonte, the Board has never appointed a committee to investigate a hospital physician for on-call violations except Dr. Knatt.
The most graphic evidence of racial animus was provided by surgical nurse Marlene Bucionne. She testified that the nurses were ordered by Jeanne Partin (nurse supervisor and sister of orthopedic surgeon Dr. Fonte), Dr. Fonte and Terry Whittington, CEO, to monitor Dr. Knatt’s activities closely and document anything they could find on which to base a reprimand. This documentation was to be de *490 livered to hospital officials and administration. Dr. Knatt argues that this supports his argument that hospital officials were looking for a reason to get rid of him and supports his statements that the complaints by the nurses of Dr. Knatt’s behavior in surgery were false or exaggerated. Lane Memorial Board Member Etta Hearn wrote to CEO Whittington complaining of the baseless complaints about Dr. Knatt by the nurses in March 2002. Dr. Knatt testified that the complaints of the nurses in general and those that led to his suspension were false or overstated. He also provided evidence that similar complaints about other doctors, including Dr. Fonte, were not acted upon.
The extensive evidence presented by Dr. Knatt supports an inference that Dr. Knatt was being targeted for mistreatment and more intense scrutiny than other doctors because of his race. Nurse Bucionne’s testimony went directly to the defendants’ racial animus. She testified in her deposition that at least two of the three doctors on the MEC, Dr. Rathbone and Dr. Medina, used racial epithets in reference to Dr. Knatt at a meeting involving the investigation of Dr. Knatt. She also testified that she heard the third member of the MEC, Dr. Fonte, using racial epithets several times but did not provide the context for those comments. These are the same doctors who ordered Dr. Knatt’s suspension. Although her testimony is not entirely clear, the hospital CEO, Jeanne Partin and other nurses on the operating staff were part of that meeting and also used racial epithets in relation to Dr. Knatt. These are the same nurses who brought the complaints that were used to support Dr. Knatt’s suspension.
This direct evidence raised an issue of fact that racial animus played a role in the suspension of Dr. Knatt. The statements refer to race; they were made by the members of the MEC who ordered Dr.
Knatt’s suspension, i.e. the applicable decision makers; and they were related to the decision process because they occurred in a meeting at which the nurses were directed to gather evidence which was used as a basis for the suspension. Patel v. Midland Mem. Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir.2002). The use of racial epithets by the nursing staff who submitted the evidence on which the suspension was based is also relevant.
Use of racial epithets in an employment context is direct evidence of discrimination sufficient to defeat summary judgment. In Brown v. East Miss. Elec. Power Ass’n, the plaintiff presented evidence that his supervisor used racial epithets both generally and in reference to him. We said—
Unlike certain age-related comments which we have found too vague to constitute evidence of discrimination, the term “nigger” is a universally recognized opprobrium, stigmatizing African-Americans because of their race.
Brown v. East Miss. Elec. Power Ass’n, 989 F.2d 858, 861 (5th Cir.l993)(footnote omitted). See also footnote 8 of that case, listing cases dealing with use of this racial epithet as direct evidence of discrimination.
See Kendall v. Block, supra [821 F.2d 1142 (5th Cir.1987) ] (calling an employee “nigger” may be direct evidence of discrimination); EEOC v. Alton Packaging Corp., 901 F.2d 920 (11th Cir.1990) (general manager’s statement that if it were his company he would not hire blacks is direct evidence of discriminatory animus in failing to promote the plaintiff); Brewer v. Muscle Shoals Bd. of Educ., 790 F.2d 1515 (11th Cir.1986) (school superintendent’s comment that he did not want to appoint plaintiff to an administrative position because he did not want to see the school system “nigger-rigged” is direct evidence of discriminatory animus, even though the *491 comment was made with regard to an incident occurring after the alleged violation); Bibbs v. Block, 778 F.2d 1318 (8th Cir.1985) (en banc) (selection committee member’s characterization of plaintiff as a “black militant” and reference to another black employee as “nigger” was direct evidence of discrimination in failure to promote), overruled on other grounds by Price Waterhouse[ v. Hopkins], supra [490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ].
Id. at 862.
The most obvious way of showing an unlawful employment practice is to offer “evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents ...” [citing Troupe v. May Department Stores Company, 20 F.3d 734 (7th Cir. 1994) ] Examples include epithets or slurs uttered by an authorized agent of the employer.... When produced, such “direct” evidence will without more ordinarily suffice to show that an adverse employment condition, or limitation on an employment opportunity, was imposed “because of’ the plaintiffs protected group characteristic.
Civil Rights and Employment Discrimination Law, Harold S. Lewis, Jr. (West 1997), § 4.2.
The direct and circumstantial evidence of discrimination set forth above creates a genuine issue of fact on the question whether the defendants conspired to find a reason—pretextual or otherwise—to get rid of Dr. Knatt and that racial animus played a role in Dr. Knatt’s suspension. For this reason I would vacate the dismissal of Dr. Knatt’s § 1983 and § 1985 claims and remand this case to the district court for trial.