[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14761

_____

D.C. Docket No. 1:09-cv-02111-JEC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 8, 2012
JOHN LEY
CLERK

ADESUWA ALBERT-ALUYA,

Plaintiff-Appellant,

versus

BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 8, 2012)

Before CARNES, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Adesuwa Albert-Aluya appeals from the district court's grant of summary

judgment in favor of her former employer, Burlington Coat Factory Warehouse

Corporation. Following oral argument and review of the record, we reverse the grant

of summary judgment on the Title VII national-origin/wrongful-termination claim, affirm in all other respects, and remand for further proceedings.[1]

I

The relevant facts, viewed in the light most favorable to Ms. Albert-Aluya, are as follows.

Ms. Albert-Aluya is a U.S. citizen born and raised in Nigeria. She worked for Burlington Coat Factory Warehouse, where she received a promotion from store manager to regional loss-prevention manager in January of 2007. As a regional loss-prevention manager, Ms. Albert-Aluya investigated thefts and audited stores for "shrinkage"—retail jargon for losses attributable to thefts and misplaced goods.

After her promotion, Todd Brawner, another Burlington employee, "congratulated" Ms. Albert-Aluya, saying, "I bet this is a great achievement considering your nationality. As an African, you must be the first to achieve this much success in your family given your accent." Mr. Brawner soon received his own promotion at Burlington and became one of the persons to whom Ms. Albert-Aluya reported as regional loss-prevention manager. After becoming, essentially, Ms. Albert-Aluya's supervisor, Mr.

---

[1] We affirm, for the reasons stated in the well-reasoned and meticulous report and recommendation issued by the magistrate judge and adopted by the district court, the entry of summary judgment in favor of the defendants on all but the national-origin/wrongful-termination claim under Title VII, and we discuss only that claim.

Brawner continued to harp on her "thick African accent." In May 2007, for instance, while on a conference call with Ms. Albert-Aluya, Mr. Brawner mentioned her accent, as well as her "African ethnicity and ancestry."

On September 20, 2007, Ms. Albert-Aluya had a meeting with Mr. Brawner and two other Burlington employees—Glenn Hodge, the regional human resource generalist, and Janet Van Dyke, a regional manager of loss prevention. Mr. Brawner fired Ms. Albert-Aluya and demanded that she return her company-issued laptop and cellphone. Ms. Van Dyke then told Ms. Albert-Aluya that Burlington fired her because she was "not cut for the job." When Ms. Albert-Aluya asked why, Ms. Van Dyke blamed her "thick African accent," noting that people did "not understand" her accent. Mr. Hodge lamented that Ms. Albert-Aluya did not "speak more like an American."

At their depositions, however, Mr. Brawner, Mr. Hodge, and Ms. Van Dyke offered different reasons for the firing. Ms. Van Dyke depicted Ms. Albert-Aluya's reports investigating thefts as "not being correct on a couple of incidents." Mr. Brawner too blamed inaccuracies in Ms. Albert-Aluya's reports. But he also pointed to Ms. Albert-Aluya's lack of communication skills. For example, according to Mr. Brawner, Ms. Albert-Aluya would never speak with a store manager as she audited the store for shrinkage. He thought that Ms. Albert-Aluya showed a lack of courtesy. For his part, Mr. Hodge testified that Ms. Albert-Aluya offended store managers and store employees

3

when she investigated issues at the stores.

Ms. Albert-Aluya sued Burlington, Burlington Coat Factory of Georgia, LLC, and Mr. Brawner for violating Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. She asserted four federal claims: (1) denial of equal protection under § 1981; (2) harassment and discrimination in violation of Title VII; (3) gender discrimination in violation of Title VII; and (4) retaliatory discharge in violation of § 1981 and Title VII. She also asserted claims for intentional infliction of emotional distress and negligent supervision and retention under Georgia law.

After discovery, Burlington, Burlington LLC, and Mr. Brawner moved for summary judgment. The magistrate judge submitted a detailed 117-page report, recommending that summary judgment be granted in favor of the defendants on all the federal claims. The magistrate judge also recommended that the district court decline to exercise supplemental jurisdiction over the state-law claims or, alternatively, grant summary judgment in favor of the defendants.

The district court adopted the report and recommendation over the objections of Ms. Albert-Aluya, and declined to exercise supplemental jurisdiction over the state-law claims. Ms. Albert-Aluya then appealed.

II

We exercise plenary review in reviewing a summary judgment order. *See Alvarez*

*v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). A court must grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *Accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). It must also "resolve all reasonable doubts about the facts in favor of the nonmovant." *United of Omaha Life Ins. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

III

In relevant part, Title VII makes it unlawful to fire an employee or to otherwise discriminate against an employee based on the employee's national origin. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove her Title VII claim in two ways. She can do so either with direct evidence or with circumstantial evidence. If she offers direct testimony that the employer acted with discriminatory motive, the employer must then show that it "would have reached the same decision without" the discriminatory motive. *See, e.g.*, *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990). By contrast, where a plaintiff offers circumstantial evidence giving rise to an inference of discriminatory motive, courts look to the burden-shifting framework outlined in

5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination or retaliation. If she does so, the burden then switches to the employer to offer "a legitimate, nondiscriminatory reason for its actions." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). If the employer does so, "the burden of production shifts to the plaintiff to offer evidence that the alleged reason . . . is a pretext for illegal discrimination." *Id.*

Burlington asserts that Ms. Albert-Aluya explicitly waived her national-origin theory in her response to the motion for summary judgment. The magistrate judge and the district court agreed with Burlington, but we do not. Although the response is not a model of clarity, a fair reading of the document shows that Ms. Albert-Aluya waived her national-origin argument only with regard to her failure-to-promote claim, and not her wrongful-termination claim. So we move to the merits of the wrongful-termination claim.

Ms. Albert-Aluya established a prima facie case of discrimination. A plaintiff may establish a prima facie case of discrimination "by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class." *Alvarez*, 610 F.3d at 1264. Ms. Albert-Aluya hails from Nigeria. She presented evidence that Mr. Brawner

6

often made derogatory comments to her about her African ethnicity and accent. He told her she should "try to speak more like an American" and should watch her communication style because "Africans are known to be brash and aggressive." When she was promoted, Mr. Brawner allegedly told her: "I bet this is a great achievement considering your nationality. As an African, you must be the first to achieve this much success in your family given your accent." Ms. Albert-Aluya testified that at the September 20, 2007, meeting she had with Mr. Brawner, Ms. Van Dyke, and Mr. Hodge, Mr. Brawner told her she was fired, Ms. Van Dyke stated that the termination was because of her "thick African accent" and "being too brash with people," and Mr. Hodge criticized her for failing "to speak more like an American." All of that, together with other circumstantial evidence that Ms. Albert-Aluya presented, is enough to establish a prima facie case for her claim that she was wrongfully terminated based on her national origin.

Burlington responded to this prima facie case and offered legitimate, nondiscriminatory reasons for its action. According to Burlington, Ms. Albert-Aluya was fired because of her communication style and because of inaccuracies in her work. But "[a]n employee may demonstrate pretext either directly" by showing "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sweat v. Miller*

7

*Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983) (internal quotation marks omitted). An employee does this when she "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted). *See generally Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (explaining pretext in employment discrimination).

Ms. Albert-Aluya, we conclude, presented enough evidence, when viewed in the light most favorable to her, such that a reasonable factfinder could find Burlington's proffered nondiscriminatory reason unworthy of credence. Although Burlington contends that it fired Ms. Albert-Aluya because of her communication style and inaccuracies in her reports, there is evidence that two managerial-level Burlington employees told Ms. Albert-Aluya that she was being fired because of her thick African accent. Comments about an accent may indicate discrimination based on one's national origin. *See Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1341, 1348 (11th Cir. 2005) (upholding jury finding of national-origin discrimination based, partially, on remarks about the plaintiff's accent). As we have discussed, Ms. Albert-Aluya presented evidence that Mr. Brawner often made derogatory comments about her African ethnicity and accent and told her that Africans were "too brash." She testified that when Mr. Brawner

8

fired her, Ms. Van Dyke explained that it was because of her "thick African accent" and for "being too brash with people," and Mr. Hodge criticized her for failing "to speak more like an American." In light of that and the other circumstantial evidence, there is a genuine issue of material fact about whether the defendants' proffered reasons for firing her were pretextual. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("The evidence of pretext may include . . . the same evidence offered initially to establish the prima facie case.").

In our view, Ms. Albert-Aluya presented enough evidence to permit a reasonable jury to find that the firing was discriminatory. *See Reeves*, 530 U.S. at 149 ("[A] prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability . . . ."). The district court therefore erred in granting the defendants' summary judgment motion on the Title VII wrongful-termination claim based on Ms. Albert-Aluya's national origin.

## IV

The case is remanded to the district court for a trial on the Title VII wrongful-termination claim based on a theory of national-origin discrimination. In all other respects, the district court's grant of summary judgment is affirmed.[2]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[2] On remand, the district court will also need to address the merits of the state law claims.